# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5185**　　　　　　　　　　　　**September Term, 2024**

**1:25-cv-00804-BAH**

**Filed On:** June 27, 2025

United States Institute of Peace, et al.,

      Appellees

    v.

Kenneth Jackson, in his official capacity as
Assistant to the Administrator for
Management and Resources for USAID and
in his purported capacity as acting president
of the United States Institute of Peace, et al.,

      Appellants


**BEFORE:**　　Katsas, Rao, and Walker, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for stay pending appeal and an immediate administrative stay, the opposition thereto, and the reply, it is

**ORDERED** that the motion for stay pending appeal be granted. The Government has shown that (1) it "is likely to succeed on the merits," (2) it "will be irreparably injured absent a stay," (3) a stay will not "substantially injure" other interested parties, and (4) a stay is in the "public interest." See Nken v. Holder, 556 U.S. 418, 434 (2009).

## I. Background

Congress created the United States Institute of Peace in 1984 as "an independent, nonprofit, national institute" designed "to promote international peace and the resolution of conflicts among the nations and peoples of the world without recourse to violence." 22 U.S.C. § 4601(b). The Institute is governed by a fifteen-member board, comprised of three ex officio members — the Secretary of State, Secretary of Defense, and president of the National Defense University — and twelve members appointed by the President and confirmed by the Senate. Id. § 4605(b). The twelve appointed members are statutorily insulated from at-will removal by the President. Id. § 4605(f) (specifying removal restrictions).

On February 19, 2025, President Trump issued an executive order directing that the "non-statutory components and functions" of the Institute "shall be eliminated to the maximum extent consistent with applicable law" and that the Institute "shall reduce the performance of [its] statutory functions and associated personnel to the minimum presence and function required by law."  Exec. Order No. 14,217 § 2, 90 Fed. Reg. 10577, 10577 (Feb. 19, 2025).  Following that order, on March 14, 2025, President Trump terminated the Institute's appointed members without invoking the criteria in 22 U.S.C. § 4605(f).  United States Institute of Peace v. Jackson, No. 25-cv-804, 2025 WL 1428641, *7 (D.D.C. May 19, 2025).  The three remaining ex officio members then replaced the Institute's president and transferred the Institute's headquarters building to the General Services Administration, among other contested actions.  Id. at *7, *10; see 22 U.S.C. § 4606(a) (authorizing Board to appoint and remove the Institute's president).

Five of the removed board members challenged their terminations as unlawful.  United States Institute of Peace, 2025 WL 1428641 at *10.  They requested reinstatement and further argued that after their removals, "all subsequent actions taken on behalf of [the Institute] under defendants' leadership" are invalid.  Id. at *10, *12.  The district court agreed.  It entered a permanent injunction reinstating the removed board members and unwinding various actions taken by the ex officio members during the removed members' absences.  Id. at *45-47.

## II. Likelihood of Success on the Merits

As a general rule, the President may remove executive officers at will.  Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2206 (2020).  The Supreme Court has recognized a narrow exception for "multimember expert agencies that do not wield substantial executive power" and that exercise "quasi-judicial" or "quasi-legislative" power.  Id. at 2199-2200.  Because the Institute exercises substantial executive power, the Government is likely to succeed on its claim that the Board's removal protections are unconstitutional.[1]

---

[1] Although Congress structured the Institute as a nonprofit corporation, it "is part of the federal government for constitutional separation-of-powers purposes."  United States Institute of Peace v. Jackson, No. 25-cv-804, 2025 WL 1428641, *20 (D.D.C. May 19, 2025); Herron v. Fannie Mae, 861 F.3d 160, 167 (D.C. Cir. 2017) ("a corporation is part of the Government for constitutional purposes when: (1) the Government creates the corporation by special law, (2) for the furtherance of governmental objectives, and (3) retains for itself permanent authority to appoint a majority of the directors of that corporation" (cleaned up)).

The record shows that the Institute engages in extensive activities within the domain of the President's foreign affairs powers. According to declarations submitted by the plaintiffs, the Institute "has engaged in peacebuilding with conflict parties, armed groups, key civil society actors, and other stakeholders" abroad. Robinson Decl. ¶ 4, Dkt. No. 20-11. For example, the Institute brought together "trusted Palestinian, Israeli, and regional interlocutors to work together on problem-solving related to post-conflict recovery and stabilization in Gaza." Id. ¶ 6. It also fielded requests from the government of the Philippines "to discreetly facilitate ceasefire efforts" between it and a rebel group. Harding Decl. ¶ 6, Dkt. No. 20-8. In Afghanistan, the Institute rented an office in Kabul to "convene a variety of Afghan and international stakeholders . . . and create[] a neutral space for peacebuilders to engage in open dialogue." Worden Decl. ¶ 5, Dkt. No. 20-34. And the Institute facilitated "informal conversations with the Azerbaijani and Armenian Embassies about what would be needed . . . to reach a peace agreement ending their 30-plus year war." Dale Decl. ¶ 6, Dkt. No. 20-9. We agree with the Government that "[f]acilitating the foreign policy of the United States by brokering peace among warring parties on the international stage is plainly an exercise of executive power under our Constitution." Stay Mot. at 11.

The Institute also shapes foreign affairs in the interest of the United States through the exercise of soft power. For example, it provides "stipends, grants, fellowships, and other support to . . . leaders and scholars" from abroad and "conduct[s] training, symposia, and continuing education programs" for "noncitizens." 22 U.S.C. § 4604(b)(1), (6). These are not merely "investigative and informative activities," contra United States Institute of Peace, 2025 WL 1428641 at *29 (quoting Buckley v. Valeo, 424 U.S. 1, 137 (1976)), but soft-power initiatives intended "to further the Nation's interest in promoting international peace," 22 U.S.C. § 4601(a)(7). The Institute does all this while authorized to use "'United States' or 'U.S.' or any other reference to the United States Government or Nation in its title or in its corporate seal, emblem, badge, or other mark of recognition." Id. § 4603(e)(2).

The President's inability to control the Institute's exercise of these "significant executive power[s]" undermines his ability to set and pursue his foreign policy objectives. Seila Law, 140 S. Ct. at 2192; cf. United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320 (1936) (the President is the "sole organ of the federal government in the field of international relations"). For that reason, the Government is likely to succeed on its claim that the Board's removal restrictions violate Article II.

### III. Remaining Stay Factors

The remaining factors favor a stay.

The President faces irreparable harm from not being able to fully exercise his executive powers.  That harm outweighs any harm the removed board members may face.  Trump v. Wilcox, 145 S. Ct. 1415, 1415 (2025) ("the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty").  And finally, a stay is in the public interest because the people elected the President, not the removed board members, to wield the executive power.

\*          \*          \*

For these reasons, the Government has met its burden for a stay pending appeal.

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Selena R. Gancasz
Deputy Clerk